UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
OMAR SOCIAS, :
:
                  Plaintiff, :
: **MEMORANDUM AND ORDER**
                -against- : 13-CV-2151(DLI)(RLM)
:
VORNADO REALTY L.P., and AQUA TREAT, :
LTD., :
:
                Defendants. :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff Omar Socias ("Plaintiff") filed the instant action against Vornado Realty L.P. and Aqua Treat, Ltd. (collectively, "Defendants") alleging, *inter alia*, violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or "Act"). On June 18, 2013, before Defendants answered, Plaintiff submitted a letter indicating that the parties reached an agreement and Plaintiff would submit a stipulation of dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure ("Rule 41").[1] (Plaintiff's Letter, Dkt. Entry No. 11.) The Magistrate Judge endorsed the letter, and ordered Plaintiff to submit documentation as to the fairness of the settlement, as required by my individual rules and practices for settlements in FLSA actions. (Endorsed Order, Dkt. Entry No. 12.) Plaintiff filed a letter objecting generally to required fairness hearings for settlements filed pursuant to Rule 41 in FLSA cases. (Plaintiff's Objections, Dkt. Entry No. 13 1-2.) Plaintiff also argued that the settlement at issue was fair. (*Id.* at 3.)

      This issue rarely presents an opportunity to write an opinion as counsel for plaintiffs typically submit the requested information for determining whether a particular FLSA settlement

---

[1] Under Rule 41, "subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute" a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a).

was reached fairly. The Second Circuit, too, has yet to address the issue, although in a recent decision, the Circuit held, *inter alia*, that a district court's order directing the parties to undergo a fairness hearing is not an appealable order.[2] In light of the divergent approaches of district courts, the Court welcomes the opportunity to explain the reasons for requiring fairness hearings on settlements filed pursuant to Rule 41 in FLSA actions.

## DISCUSSION

In 1938, Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). In the following decade, the Supreme Court issued two notable opinions addressing the compromise and waiver of FLSA rights: *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946). *Brooklyn Savings* and *Gangi* highlight the "private-public" purpose of the Act, recognizing the Congressional intent to aid unprotected, low-paid workers, to deter employers from paying sub-minimum wages, and to foster uniformity of compliance across employers and industries. The opinions, therefore, are instructive with respect to judicial supervision of FLSA settlements.

In the first case, *Brooklyn Savings Bank*, the Supreme Court resolved three consolidated cases, one of which involved a bank that employed a night watchman for approximately two years, but failed to pay him overtime wages due under the FLSA. Prior to the commencement of litigation, the bank paid the employee all of the statutory overtime owed to him in exchange for

---

[2] Recently, in *Cabrera v. Nassau Medical Services, P.C.*, 2013 WL 2302064 (2d Cir. May 28, 2013) (summary order), the Second Circuit held that a district court order, which directed the parties to file a motion to approve an FLSA settlement, did not constitute an appealable order and did not present a justiciable case or controversy. *Id.* at *1-2. The court acknowledged the "general continuing controversy regarding whether parties may settle claims brought under the FLSA without court approval," *id.* at *2, but did not address the issue because it lacked jurisdiction to hear the appeal.

2

the employee releasing his FLSA rights; however, nothing in the record demonstrated that there was a bona fide dispute between the parties concerning the amount of wages owed or the bank's status as a "covered" employer under the FLSA. After signing the release, the employee sued the bank to recover liquidated damages under the FLSA. The Court, examining the purposes and policy of the Act, concluded that, in the absence of a bona fide dispute as to liability, an employee's written waiver did not bar a subsequent action to recover liquidated damages. *Brooklyn Savings Bank*, 324 U.S. at 704-07 ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.").

In *Gangi*, decided one year after *Brooklyn Savings Bank*, the Supreme Court considered the validity of a settlement reached between an employer and its former employees under "threat of suit" and prior to the commencement of litigation. Although the employer disputed the employees' right to overtime payments, it nonetheless agreed to fully compensate the employees for unpaid overtime compensation in exchange for a signed release from the employees. The employees then brought suit to recover liquidated damages under the FLSA. The Court held that the obligation to pay "liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage." *Gangi*, 328 U.S. at 114. Notably, the Court also suggested in *dicta* that employees may waive FLSA claims pursuant to judicially-supervised settlements. *Id.* at 113 n.8. ("[B]y the simple device of filing suits and entering agreed judgments, . . . the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties.").

Following *Gangi*, several circuits opined that FLSA claims can be settled or compromised where a district court has scrutinized the proposed settlement for fairness. *See Santana v. Cafe Au Bon Gout, Inc.*, 2012 WL 3201403, at *1 (S.D.N.Y. Aug. 6, 2012) (collecting cases). Additionally, three years after *Gangi*, Congress passed the Fair Labor Standards Amendments of 1949, which explicitly authorized the supervision of settlements by the Secretary of Labor. *See* 29 U.S.C. § 216(c) ("The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.").

*Brooklyn Savings Bank* and *Gangi* considered the enforceability of out-of-court settlements in *subsequent* FLSA actions. Although those cases were in a different procedural posture than this one, the holdings are instructive on the issue before this Court—namely, whether dismissal of a *pending* FLSA action should be conditioned on judicial approval of the parties' underlying settlement agreement. District courts are split. For example, in *Picerni v. Bilingual Seit & Preschool Inc.*, 2013 WL 646649 (E.D.N.Y. Feb. 22, 2013), one of my colleagues concluded that conditioning voluntary dismissal on judicial approval in FLSA cases runs contrary to Federal Rule 41:

> However, although I have ruled to the contrary in the past, I have come around to the view that the procedure of a court requiring approval before it permits parties to voluntarily dismiss an FLSA action is incorrect. It runs afoul of Fed. R. Civ. P. 41, which gives the plaintiff, at the early stage of the case, or the parties jointly, at a later stage in the case, free reign to discontinue for any reason. . . .

4

> I cannot agree with the largely unstated assumption in the cases that refuse to allow voluntary dismissals that the FLSA falls within the "applicable federal statute" exception to the Rule. Nothing in *Brooklyn Savings*, *Gangi*, or any of their reasoned progeny expressly holds that the FLSA is one of those Rule 41-exempted statutes. For it is one thing to say that a release given to an employer in a private settlement will not, under certain circumstances, be enforced in subsequent litigation—that is the holding of *Brooklyn Savings* and *Gangi*—it is quite another to say that even if the parties want to take their chances that their settlement will not be effective, the Court will not permit them to do so.

*Picerni*, 2013 WL 646649, at *5.

I respectfully disagree with that conclusion as there are several indications that the Act is, in fact, exempt from Rule 41. First, as the Supreme Court noted, "the [FLSA] was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal *compulsory legislation to prevent private contracts* on their part which endangered national health and efficiency . . . ." *Brooklyn Savings Bank*, 324 U.S. at 706-07 (emphasis added; footnotes omitted). Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly. In recognition of this problem, the FLSA is distinct from all other employment statutes. Indeed, the Department of Labor, which recently amended regulations to the Family and Medical Leave Act of 1993 ("FMLA") to clarify that FMLA settlements do not require judicial or administrative approval, aptly highlighted the distinction:

> Consistent with this statutory authorization, the Secretary has established an administrative process pursuant to which the Wage and Hour Division investigates and attempts to resolve FMLA complaints in the same way that it handles FLSA complaints. The supervised settlement practice, however, is unique to the FLSA. . . . The judicial prohibition against private settlements under the FLSA is based on policy considerations unique to the FLSA. The FLSA is a remedial statute setting the floor for minimum wage and overtime pay. It was intended to protect the most vulnerable workers, who lacked the bargaining

5

power to negotiate a fair wage or reasonable work hours with their employers. The judicially-imposed restrictions on private settlements under the FLSA have not been read into other employment statutes that reference the FLSA and should not be read into the FMLA. Even the Age Discrimination in Employment Act ("ADEA"), which explicitly references section 16(c) of the FLSA (29 U.S.C. 216(c)), *see* 29 U.S.C. 626(b), has not been interpreted as requiring supervised settlements. Like the ADEA, the FMLA is not primarily focused on pay, and protects all segments of the workforce, from low wage workers to highly paid professionals.

73 Fed. Reg. 67987 (Nov. 17, 2008).

Thus, although employees, through counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement, "[t]he purposes of [FLSA] require that it be applied *even to those who would decline its protections*." *See Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (emphasis added).[3]

Second, in addition to protecting vulnerable employees, judicial approval of settlement in pending FLSA cases furthers the Act's "deterrent effect which Congress plainly intended." *Brooklyn Savings Bank*, 324 U.S. at 709-10 (noting that "[a]lthough the right to sue [under the FLSA] is compensatory, it is nevertheless an enforcement provision" affecting the public interest). Knowledge on the part of employers that FLSA lawsuits cannot be dismissed or settled without judicial approval provides an incentive for them to engage in meaningful settlement negotiations with employees and encourages their future compliance with the Act. Without judicial oversight, however, employers may be more inclined to offer, and employees, even

---

[3] *Alamo* involved the unusual circumstance of individuals who worked for commercial businesses operated by a religious organization and viewed themselves as "volunteers" for the organization. The Supreme Court held that the individuals nonetheless were "employees" within the meaning of the Act, reasoning that, "[i]f an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Alamo*, 471 U.S. at 302.

6

when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the Act. Judicial oversight of settlements also guards against settlements in which plaintiffs' attorneys keep the lion's share of the proceeds for themselves.

Finally, judicial approval is consistent with the "Congressional policy of uniformity in the application of the provisions of the Act to all employers." *Brooklyn Savings Bank*, 324 U.S. at 703 (recognizing Congressional policy that "[a]n employer is not to be allowed to gain a competitive advantage by reason of the fact that his employees are more willing to waive claims for liquidated damages than are those of his competitor"). In particular, employees who are undocumented or non-native English speakers may be less willing to appear for depositions or testify in court in FLSA actions and, as a result, are more likely to accept low or unreasonable settlements. Judicial approval promotes uniformity and ensures that the industries and employers that hire such individuals in greater proportion are properly held accountable.

In sum, to permit Rule 41 to trump the FLSA would nullify the purposes of the Act and thwart the legislative policies it was designed to effectuate. Practical experience shows that FLSA cases are typically resolved quickly, and judicial oversight, albeit far from perfect, provides additional assurance that fair and reasonable settlements are achieved.

**CONCLUSION**

As set forth above, Plaintiff's objections to the fairness hearing ordered in this action are overruled. Accordingly, this matter is referred to the Magistrate Judge to review the settlement for fairness.

SO ORDERED.

Dated: Brooklyn, New York
January 16, 2014

/s/
DORA L. IRIZARRY
United States District Judge