# Abdul Hassan Law Group, PLLC
## 215-28 Hillside Avenue
## Queens Village, New York, 11427
### ~~~~~

**Abdul K. Hassan, Esq.**                                    Tel: 718-740-1000
Email: abdul@abdulhassan.com                                 Fax: 718-740-2000
*Employment and Labor Lawyer*                                Web: www.abdulhassan.com

### March 30, 2014

**Via ECF**

Hon. Roanne L. Mann, USMJ
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

<u>Re: Omar Socias v. Vornado Realty L.P., and Acqua Treat, Ltd.</u>
Case #: 13-CV-2151 (RLM)
Hearing Supplement

Dear Magistrate-Judge Mann:

My firm represents plaintiff in the above-referenced case and I write to provide the Court

with a copy of plaintiff's retainer agreement (**Attachment 1**) in this action, and to address a few

other matters. At the outset, now that Magistrate-Judge Mann is acting with full authority in this

action, plaintiff reiterates his objection that this Court has no authority to deprive the parties of

the right to discontinue this action by stipulation pursuant to Rule 41 without court approval. In

<u>Hester Industries, Inc. v. Tyson Foods, Inc.</u>, 160 F.3d 911, 916 -917 (2d Cir. 1998), the Second

Circuit stated in relevant part as follows:

> The judge's signature on the stipulation did not change the nature of the dismissal.
> Because the dismissal was effectuated by stipulation of the parties, the court
> lacked the authority to condition dismissal on compliance with the Agreement.
> See Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 81 n. 21 (3d
> Cir.1994) ("[U]nder Fed.R.Civ.P. 41(a)(1)(ii), parties to a civil action may

1

stipulate to a dismissal of an action at any time. A court has no authority to disapprove or place conditions on any such dismissal."); In re Wolf, 842 F.2d 464, 466 (D.C.Cir.1988) (per curiam) (" '[C]aselaw concerning stipulated dismissals under Rule 41(a)(1)(ii) is clear that the entry of such a stipulation of dismissal is effective automatically and does not require judicial approval.' ") (quoting Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir.1984)).

Moreover, there is nothing in the FLSA which states that the FLSA is an exception to Rule 41 and there is no Supreme Court, Second Circuit or other court of appeals precedent holding as such. The only reason the parties in this action have not filed a stipulation of dismissal is because the Court has prevented them from doing so. At the point where this Court prevented the parties from filing a stipulation of dismissal, this Court was acting without jurisdiction and continues to do so in light of Hester. Notably, in what is probably the first published opinion to carefully examine the role of Rule 41 in FLSA cases, Judge Cogan in Picerni v. Bilingual Seit & Preschool Inc., 925 F.Supp.2d 368 (E.D.N.Y. 2013), reversed his position and stated in relevant part as follows:

> although I have ruled to the contrary in the past, I have come around to the view that the procedure of a court requiring approval before it permits parties to voluntarily dismiss an FLSA action is incorrect.

In another one of my cases, Cheeks v. Freeport Pancake House, Inc. et al, 12-cv-04199 (JS) (ARL), the Hon. Judge Seybert, at plaintiff's request, granted a stay of the action and certified her order requiring Court approval, for appeal to the Second Circuit. Hopefully, the Second Circuit will put an end to the chaos concerning the settlement approval issue in FLSA cases in this Circuit.

While plaintiff believes the submissions thus far are sufficient for the court to approve the settlement, a few clarifications are in order. First, the Court mentioned during the March 28, 2014 conference that it only had plaintiff's four-page letter before it. It should be noted that the record includes more than the four-page letter which was filed on June 21, 2013. Attached to that

2

letter is a declaration elaborating on plaintiff's skill, reputation and experience and an explanation of the $600/hr rate. For the Court's convenience, that declaration along with the fee survey/report referenced therein are attached hereto. **(See Attachment 2, ¶ 21-34).**

More importantly, however, there seems to be some confusion as to role of the Court here. In <u>Misiewicz v. D'Onofrio General Contractors Corp.</u>, 2010 WL 2545439, 5 (E.D.N.Y.,2010), the Court stated in relevant part as follows:

> However, "[t]he FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action. Indeed, the purpose of the fairness review is to ensure that an employer does not take advantage of an employee in settling his claim for wages, and not to ensure that the employee does not overcharge the employer." Dail v. George A. Arab Inc., 391 F.Supp.2d 1142, 1146 (M.D.Fla.2005) (approving settlement providing for $10,600 in attorney's fees and $6,400 in owed wages to plaintiff).

Nonetheless, the fees plaintiff's counsel is due to receive in this case are extremely reasonable and fair by any measure or approach. Here, the fees to plaintiff's counsel which were agreed to by plaintiff and defendant in the written settlement agreement represents about 60 percent of the fees not including the significant amount of time expended on the settlement approval issue in the last nine months.

The Court noted in its minute entry that defense counsel Werner said that a single sum was proposed and the division was done afterwards. There seems to be some confusion here. For example, in a May 30, 2013 settlement email, defense counsel Werner stated in relevant part as follows:

> As I understand it, Acqua Treat has acknowledged on its own part an issue involving about 70 hours. Your client's number has fluctuated from 235 now to 154.

> … Assuming the 154 hours to be true - which I do not know to be the case – and assuming an overtime rate of $36, that translates to $5544.

Throughout the discussions, it was specifically discussed as above and understood that of the global settlement number, a maximum of $5544 represented unpaid wages. In terms of the Court's work on the approval issue, if the Court finds that plaintiff is completely right and defendant is wrong about the hours, then $5544 is a fair and reasonable settlement of the unpaid wage claim instead of the 70 hours put forth defendant or some number in between. Likewise, if on the facts presented, this Court is willing to rule that defendants acted in bad faith, this Court can then find that an equal amount of $5544 in liquidated damages is fair and reasonable. Even if the Court finds that defendants cannot show good faith and plaintiff would be entitled to maximum liquidated damages, plaintiff is allowed to waive liquidated damages and is free to allocate liquidated damages towards the payment of attorney's fees. In this regard, a unanimous U.S. Supreme Court in Venegas v. Mitchell, 495 U.S. 82, 89-90 (1990) stated in relevant part as follows:

> But neither Blanchard nor any other of our cases has indicated that § 1988, by its own force, protects plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents. Indeed, depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel.

In Brown v. Starrett City Associates, 2011 WL 5118438, 8 (E.D.N.Y.), Magistrate-Judge Mann, citing Venegas, also noted that even when a court makes a fee award (which is not being done here), "The award is then subject to whatever private contractual agreement exists between plaintiff and his or her counsel." Here, even though I began charging $600/hr in 2012 and the retainer provides for yearly increases, I have never used a rate higher than $600/hr. Moreover, the fee provided for in the settlement agreement is less than plaintiff's counsel would be entitled to under the attached retainer agreement. However, it is not very common for my firm to reduce

or even waive fees so that the client can get a more than reasonable recovery in the circumstances. See Best v. Trans Express Inc., 12-cv-03598 ECF #: 27 (JG) (CLP) and Beniaminov v. J&D Haircutters, Inc., 12-cv-03595, ECF #: 15, ¶ 2, (JG) (CLP) as examples of cases where plaintiff's counsel waived significant fees and took nothing from the settlement.

Every court that has reviewed an FLSA settlement in which I was paid $600/hr has approved the settlement. In Cabrera v. Nassau Medical Services, P.C., ECF # 10, 12-cv-0210 (BMC), the district court directed the parties to seek approval of the FLSA settlement and after plaintiff submitted information about the settlement, fees and hourly rate, the district judge approved the FLSA settlement in which plaintiff's counsel here, was paid $600/hr.

In Clarke v. ALBS Cartage Corp., 13-cv-00134, ECF # 20, (BMC), the gross settlement sum was less than the plaintiff could have recovered if he won – though there were formidable liability challenges. The district judge took submissions and heard from the parties, after which he approved the settlement in which plaintiff's counsel here, was paid $600/hr.

In Rohoman v. Heritage Place LLC, ECF # 8, 12-cv-05807 (JG) (SMG) and Martin v. Kristal Auto Mall Corp., 12-cv-03439, ECF # 11, (JG) (JO), the Court approved as fair and reasonable, a settlement in which the plaintiff's counsel here, was paid $600/hr.

In Lozada v. Island Master Locksmith Inc., ECF # 20, 19, 12-cv-04827 (DRH) (ETB), the district court rejected the stipulation of dismissal and directed the parties to submit the settlement for approval. Plaintiff's counsel submitted an explanation of the settlement, fees and the $600/hr rate and the settlement was approved by the district judge.

In Kelly v. Jimmy Jazz, Inc. et al, 13-cv-01526, ECF # 20, (RRM) (CLP), the court refused to allow the parties to dismiss the FLSA action by stipulation under FRCP 41 and directed the parties to make submissions "explaining why the parties believe the proposed

settlement is reasonable." After the submissions which included a fee table and an explanation of the $600/hr rate, the Court so-ordered the stipulation and dismissed the case.

This Court's "concerns" and negative views about the fee, coupled with the Court's tone in the March 28, 2014 conference, seem to reflect insufficient deference and respect for the esteemed district judges who awarded plaintiff's counsel $250/hr in 2002 and $350/hr in 2006 and who, unlike, the Magistrate here, had the opportunity to witness plaintiff's counsel's handling of significant matters and the opportunity to review extensive fee applications that were hotly contested. Magistrate Mann's negative views also seem to reflect even less deference and respect for the esteemed district judges in this district who have approved FLSA settlements in which plaintiff's counsel was paid $600/hr. Of concern is also this Court's apparent view that the $600/hr fee would be okay if the firm charging it had clients that paid this fee by the hour outside the contingency context. This reasoning has no economic or logical basis and reflects an unwarranted preference in favor of high body-count firms that typically represent corporate defendants on the defense side. It would be a violation of due process for a court to prevent a plaintiff from hiring legal counsel at $600/hr to litigate against big firm attorneys making that rate or more. The attached 2012 report about fees in NYC (Attachment 2, Ex. 5, pg 2, ¶ 2), states that NYC has an "average partner rate topping $700 per hour and average associate rate of more than $450 per hour." Those rates would be higher today because of inflation. Moreover, if those firms worked on contingency, the $700/hr rate would be a lot higher. Yet, plaintiff's counsel has kept his rate at $600/hr since 2012, while litigating more federal cases and more FLSA cases than almost every big firm partner he has encountered in his many cases. Plaintiff has litigated about over 150 cases in this district alone and it is very common for defendants in those cases to be defended by big firms.

Here, plaintiff chose to hire a lawyer with significant federal court experience and a lawyer who successfully litigated one of the leading Second Circuit cases (Barfield v. New York City Health and Hospitals Corp., 537 F. 3d 132 (2d Cir. 2008).) on joint employment – the biggest contested issue in the case.  Because of that choice, plaintiff has recovered all of his unpaid wages plus $2,000 in liquidated damages even though an award of liquidated damages at trial seems questionable based on the facts we know now. Based on my experience conducting settlement conferences before magistrates including Magistrate Mann, magistrates generally recommend settlements for half the unpaid wages and never, as far as I can recall, include liquidated damages in settlement recommendations. Some magistrates, would even state that plaintiff should not expect liquidated damages in settlement, even where the facts and law suggest that recovery of liquidated damages is warranted.

Even though this Court is acting without jurisdiction at this point – an objection that is never waived and can be addressed at different stages of the proceedings, we respectfully urge this Court to approve the settlement so that the settlement payments to plaintiff are not delayed any further.

We thank the Court in advance for its time and consideration.

Respectfully submitted,

 _/s/ Abdul Hassan_____
**Abdul K. Hassan, Esq. (AH6510)**
*Counsel for Plaintiff*

**cc:    Defense Counsel Julie Werner (Vornado) via ECF**
**       Defense Counsel Jeffrey S. Ehrlich (Acqua Treat) via Email**

# ATTACHMENT 1

# RETAINER AGREEMENT OF
## OSCAR SOCIAS AND ABDUL K. HASSAN, ESQ.

## I. INTRODUCTION

Oscar Socias (the "Client"), by signing this agreement, retains Abdul K. Hassan, Esq., (the "Attorney"), and Client and Attorney agree to be bound by the following terms:

## II. THE ATTORNEY'S DUTIES

1.  Attorney is obligated to advise and represent Client as to Client's claim(s) for **unpaid wages against Aqua Tree LLC** other responsible parties ("the case"). *Aqua Tree LLD*

2.  Client agrees and authorizes Attorney to bring the case, or any part thereof, as an individual or class/collective action and Client agrees to be the class representative in any such class/collective action.

3.  Client hereby empowers Attorney to assert such claims in the case and to file such legal actions as Attorney may deem advisable or appropriate under the circumstances.

4.  Client understands that Attorney is entering into this retainer agreement at an early stage where all the facts and circumstances are not known to Attorney and that Attorney's initial evaluation and decision to represent Client may change as Attorney learns more about the facts and circumstances, and as Attorney does more research into the legal issues.

5.  Attorney's obligation and this retainer agreement does not cover any other claims, whether or not related to the case, including but not limited to workers compensation and discrimination claims, and such other and all claims that may arise and that may require legal services.

6.  In the event Attorney deems it advisable and appropriate in the circumstances to file a lawsuit or action, Attorney's obligation and this retainer agreement will terminate before any appeal is due or taken and may terminate sooner if Attorney withdraws from representation of Client or if Client discharges attorney as provided for in this Agreement. For example, Attorney is not obligated to handle the collection of any judgment, appeals or re-trials.

7.  Attorney is not obligated to perform services as to claims not covered by this retainer agreement or beyond the time period covered by this retainer agreement unless there is a new and separate retainer agreement between Attorney and Client which covers such additional services. However, if, in the absence of a new written retainer agreement, the Attorney provides further and/or additional services, with the client's **express** or implied consent, or if it was reasonable for Attorney to perform such services, Attorney will be compensated for such further and/or additional services as if such services were covered by this retainer agreement all along.

8.    This agreement retroactively covers any work performed by Attorney on the case before the date this agreement was executed by Client and Attorney, and Attorney shall be compensated for such work under the terms of this agreement as if such work was performed after this agreement was executed and covered by this agreement all along.

## III. THE CLIENT'S DUTIES

9.    Client agrees to provide all information and papers requested by the Attorney and to cooperate fully in any proceedings in connection with the case, including but not limited to attending scheduled meetings and hearings, answering interrogatories, appearing for depositions, and participating cooperatively in judicial or other proceedings as may arise from time to time in the case.

10.   Client must keep Attorney informed as to Client's whereabouts and the status of Client's injuries and other damages at all times during the pendency of the case. Client must cooperate in all respects when requested to do so by Attorney. Attorney will deem any substantial failure by Client to conform to the requirements of this paragraph a breach of this agreement which relieves Attorney of all obligations hereunder.

11.   Client agrees not to communicate with the court or administrative tribunal, or with other parties to the case, without Attorney's consent. The client also agrees not to misrepresent or conceal any facts when communicating with Attorneys and that filing a frivolous case or other frivolous conduct may subject client and attorney to monetary sanctions, in addition to defendant's costs and expenses which Client may be liable for if Client looses the case.

## IV. PAYMENTS REQUIRED

12.   Attorney is representing Client for a contingency fee. This means that Attorney will not be paid any fees for his work unless there is a recovery of money for Client. The amount of Attorney's contingency fee will be the greater[1] of:

        (a) A reasonable percentage fee which is one-third (1/3) of all sums recovered on Client's behalf; or

        (b) A reasonable hourly fee which is the amount of Attorney's hourly rates as laid out below times the number of hours spent by the Attorney on Client's behalf; or

        (c) A separate recovery of fees such as where a court or other tribunal awards attorney's fees or where a defendant(s) settles a demand for fees.

13.   As an example, assume the case is settled for $14,000, and Attorney advanced $2000 in costs and expenses for things such as filing fees and court reporters. At the outset, the attorney will be reimbursed the $2,000 he advanced as costs and expenses which leaves

---

[1] For example, See Venegas v. Mitchell, 495 US 82 (1990)

2

us with $12,000 net recovery. The reasonable percentage fee would be 1/3 of $12, 000 or $4,000. If Attorney's hourly fees were $3,000 (i.e. $600 x 5 hours), the total fee to Attorney would be $4,000 since this is the greater of the percentage fee and the reasonable hourly fee. If the reasonable hourly fees were $6,000, this would be the total fees paid to the Attorney because it is greater than the one-third percentage fee of $4,000. If the court in this example makes a separate award of attorney's fees of $6,500 which is paid by defendant(s), the total fees paid to Attorney would be $6,500 and client will keep the entire $12,000 amount of net damages/recovery. If the court instead, awards attorney's fees of $5,000 which is paid by defendant(s), the total fees paid to Attorney would be $6,000, and because $5,000 of this amount is covered by the separate court award, only $1,000 will come from the net recovery which leaves the Client with $11,000. The numbers used in these fee examples are hypothetical and do not indicate how much money Attorney will recover for Client, if any.

14.    Client recognizes and agrees that a separate recovery of fees and costs may be significantly larger than the initial recovery of damages for the Client. For example, in an actual case, a client hired Attorney to recover her overtime wages from the City of New York in the amount of about $1,800. Despite the small amount of damages, Attorney was able to take this case in major part because the overtime laws allowed for the recovery of attorney's fees from defendant. Very early in the case, and before a lot of fees were incurred, Attorney asked the City defendant to settle but the defendant refused. Instead, defendant hired several lawyers and forced Attorney to fight long and hard to get his client her $1,800. Attorney won the case for his client and she was awarded the $1,800 in overtime wages. However, when it was all over, Attorney had spent hundreds of hours of his time fighting to recover the wages and the Court ordered the defendant to pay the attorney's fees. The defendant eventually had to pay attorney over $100,000 in fees, costs and expenses even though the $1,800 in damages was relatively small, but because Attorney was forced to spend a lot of time on the case. If Attorney did not win this case for his client, the client would not have owed Attorney any money and Attorney would have lost over $100,000 in fees – this shows the tremendous risks Attorney takes by accepting contingency cases like this one. This is just an example and the outcome of your case will be based on its individual facts and circumstances.

15.    Client agrees that where a separate recovery of attorney's fees is sought, Attorney may seek a fee enhancement in Attorney's discretion of fifty to one-hundred percent and in cases where the circumstances warrant, a larger enhancement. The enhancement is based on factors which includes but are not limited to the risk of non-payment or underpayment, delays in payment and other difficulties that are inherent in litigating these types of contingency cases.

16.    Client recognizes and agrees that in cases where a defendant may be liable for attorney's fees if it looses, a defendant may settle a claim for attorney's fees as part of the settlement of the case before fees are set by the court. However, unless the case is certified as a class/collective action, Client will ultimately decide whether a settlement is acceptable.

3

17.   Attorney will not collect attorney's fees which exceeds the total recovery of damages plus attorney's fees.

18.   The Attorney will have complete discretion to incur litigation and other out-of-pocket expenses in the prosecution of the case, and will ordinarily advance these sums on the client's behalf. These expenses include (but are not limited to) such items as the fees paid to courts, court reporters, lay and expert witnesses, investigators and process servers; the attorneys' travel expenses, long distance telephone, facsimile transmission, and photocopying charges; courier or messenger service, and computer database access charges; and the cost of special exhibits and supplies purchased for the case. The Attorney will be reimbursed for any expenses advanced, from any recovery of money in the case, and any recovery of money in the case will first be used to reimburse Attorney for any expenses advanced, before being used to pay fees or the Client.

19.   During the litigation of this case, the court may award monetary sanctions to compensate Attorney for time spent to compel the opposing side to do what it is required. Such awards are not part of any recovery obtained on Client's behalf and belong solely to Attorney and are not included in the recovery used to compute the reasonable percentage fee.

20.   If the Attorney secures a separate recovery of costs and expenses, this separate recovery shall be refunded to the Client only to the extent that the sum of the separate recovery of costs and expenses and any costs and expenses previously paid exceeds the actual costs and expenses.

21.   Where a separate recovery of attorney's fees, costs or both is secured, the recovery for purposes of computing a reasonable percentage fee as mentioned above shall exclude such later recovery of fees and costs but shall include the value of any nonmonetary relief.

22.   Any settlement offer of a fixed sum which includes a division proposed by the offering defendant or defendants between damages and attorney's fees shall be treated by the Client and the Attorney as the offer of a single sum of money, and the division of the offer by the offer or into damages and attorney's fees shall be completely disregarded by the Client and the Attorneys. If such an offer is accepted, it shall be treated as the recovery of a single sum of money to be apportioned between the Client and the Attorney according to this agreement. However, this provision does not prevent the negotiated settlement of a claim for attorney's fees as part of the settlement of the case.

23.   Even though this agreement contemplates a single payment of a judgment or settlement, if any, in certain cases, the settlement agreement or judgment may provide for payment to Client in installments by defendant(s). When this occurs and the percentage fee as described above is greater than the other types of fees, Client agrees that Attorney would be entitled to the greater percentage fee plus an additional fixed or hourly fee paid by defendant for Attorney to handle the installment payments.

24.   Attorney may employ or associate additional lawyers who are not members of Attorney's firm to assist in the prosecution and/or handling of the case. If Attorney does so, their time will be treated the same as if they were members of Attorney's firm or the same as if the time was expended by Attorney, for the purpose of compensation under this agreement.

25.   The fee upon which we have agreed is not set by law but is negotiable between us, except that in the event the case certified as a class action, the attorney's fees would be set and approved by the court.

26.   Client understands that by electing to represent Client for a contingency fee, Attorney is undertaking the financial risk of this difficult and uncertain litigation. In lieu of the contingency fee provided by this agreement, Client may choose to undertake the risk by agreeing to pay Attorney each month at Attorney's non-contingency hourly rates of $550 in 2011, $600 in 2012, $675 in 2013, and $750 in 2014 and an hourly rate increase of ten percent annually thereafter. The client expressly declines to do so, believing that such terms are beyond Client's means, and Client chooses the terms of this agreement instead.

## V. NO GUARANTEES AND WARRANTIES

27.   By entering into this agreement with Client, Attorney is not making (and Attorney will not be making) any warranties or representations to Client concerning the outcome of Client's claims, and Attorney does not guarantee that Client will obtain any recovery in connection with the prosecution of Client's claim. Any statements Attorney may make relating to the merits of Client's claim are statements of opinion only.

## VI. TERMINATION OF REPRESENTATION

28.   As Attorney continues to investigate and develop the facts in Client's case, Attorney may, either before or after filing suit, determine that Attorney is no longer willing to go forward with the case. Attorney may, accordingly, withdraw from representation of Client at any time Attorney deems appropriate so long as Attorney does so in a manner that does not violate the applicable rules.

29.   Client retains the legal right to discharge Attorney as Client's Attorney at any time.

30.   If Attorney withdraws from representation of Client or if Client discharges Attorney at any time, and there is a subsequent recovery of money by Client based on the claims encompassed in this Agreement, Client will remain obligated to pay and will pay Attorney, that portion of the contingency fee due under this agreement equal to the pro rata share of the total work Attorney performed on the case up to the time of Attorney's withdrawal or Client's discharge of Attorney.

## VII. ASSIGNMENT AND LIEN

31.   The Client hereby assigns to the Attorney all rights and interests the Client has or may have in any claims against the defendant(s) for costs, expenses and attorney's fees based on the Attorney's work.

32.   The Client hereby gives the Attorney a continuing lien on the Client's claim(s) and the proceeds thereof and therefrom for the amount of the attorney's fees, out-of-pocket expenses, and costs for which the client is obligated under this agreement. This attorney's lien is given by the Client pursuant to the laws of the State of New York, including New York's Lien Law and/or New York's Judiciary Law.

## VIII. CONFIDENTIALITY

33.   The Client understands that the Attorney may consult with and use other attorneys, experts in other fields, investigators and others concerning the case. The Client authorizes the Attorney to consult with and use such persons and to divulge to them such privileged information as is relevant for them to assist the Attorney in connection with the case. Client also authorizes Attorney to share information with Defendant(s) as Attorney deems advisable for the proper handling of the case including settlement discussions.

## IX. SETTLEMENT OF THE CASE

34.   If the client settles the case, even after the termination of representation, the client will inform the attorney at the earliest possible moment. The client, by law, has the right to make all decisions regarding the settlement of the case. However, if, the case is at any time certified as a class action, the client understands and agrees that decisions regarding settlement must thereafter be made in the best interests of the class and that any settlement of a class action must be approved by the court.

## X. FEE MEDIATION/ARBITRATION

35.   Client has the right to arbitrate any fee dispute with Attorney through the Fee Dispute Resolution Program administered by the New York Office of Court Administration pursuant to 22 NYCRR § 137.

## XI. CONCLUSION

36.   This agreement is to be construed pursuant to the laws of the State of New York and any changes or modifications to it must be in writing and agreed to by Attorney and Client. Any changes or modifications which are not in writing are not valid or binding on Client or on Attorney. Client agrees that any suit or action concerning any dispute relating to this agreement or the relationship between Client and Attorney shall be venued in Queens County, New York.

37.   In entering into this agreement, it is the intent of Client and Attorney to comply with all applicable authorities, laws and rules. In the event any provision of this agreement is determined by a court, tribunal, or body of competent jurisdiction, to be invalid, such

provision shall be reformed in order to make it valid and the rest of the agreement shall survive.

38.     By their signatures below, the Client and Attorney acknowledge that they have read this agreement and understand its contents, that it fairly, accurately, and completely describes the agreement made between them, and that there are no agreements or representations between them not set forth herein, and that they agree to be bound by it.  This agreement supersedes any and all prior agreements between the parties and Client agrees that Client has received a fully executed original of this retainer agreement.

ATTORNEY:                                          CLIENT:

_Abdul Hassan_                                    X _____

Abdul K. Hassan, Esq.                             Oscar Socias
215-28 Hillside Avenue                            276 Rockaway Turnpike
Queens Village, NY 11432                          Cedarhurst, NY 11516
Tel: 718-740-1000                                 Tel: 386-490-0951

Date: 3-28-2013                                   Date: X   3/28/2013

# ATTACHMENT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Maria Cabrera,<br>Individually and on behalf of all others similarly<br>situated,<br><br>                             Plaintiffs,<br>   -v-<br><br>Nassau Medical Services, P.C.<br><br>                          Defendants. | **Civ. Action #: 12-CV-2106**<br>**(BMC)**<br><br><br>**MOTION FOR SETTLEMENT**<br>**APPROVAL** |

### PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL AND DECLARATION OF PLAINTIFF'S COUNSEL, AND EXHIBITS IN SUPPORT OF MOTION FOR APPROVAL

I, Abdul Karim Hassan, declare and affirm under the penalty of perjury:

1. I am the attorney for Plaintiff Maria Cabrera ("Plaintiff") in the above-entitled action, am a

    member of the Bar of the State of New York and duly admitted to practice before this Court.

2. I make this declaration in support of plaintiff's motion for approval of the settlement reached

    by plaintiff and defendant in this action, on the basis of my familiarity with the facts and

    circumstances of the case, the records and pleadings, my investigation into the matter and

    upon information and belief.

### EXHIBITS

3. The terms of the settlement are attached hereto as **Exhibit 1**.

1

4. The U.S. Department of Labor's calculation of plaintiff's damages is attached hereto as **Exhibit 2**.

5. Plaintiff's Counsel's time records are attached hereto as **Exhibit 3**.

6. A summary of a recent survey of attorney billing rates is attached hereto as **Exhibit 4**.

7. An article about a recent survey of attorney billing rates is attached hereto as **Exhibit 5**.

## Background

8. This action was commenced by the filing of the complaint on April 30, 2012. **(See ECF Docket #: 1)**. The action was brought to recover overtime wages under the FLSA and NYLL.

9. Defendant filed its answer to the complaint on June 18, 2012. **(See ECF Docket #: 5)**.

10. The Court held an initial conference on June 20, 2012 and June 26, 2012. At these conferences, a variety of issues were discussed including the U.S. Department of Labor's investigation of defendant, the hours worked by plaintiff and independent contractor versus employee status of plaintiff for part of her tenure with defendant.

11. To further develop some of the issues discussed at the initial conference, the Court scheduled a hearing for June 19, 2012.

## Settlement and Reasonableness

12. Prior to the July 19, 2012 hearing, the parties reached a settlement in this action on July 13, 2012. **(See Exhibit 1)**. The settlement had two parts. First, the parties agreed to the amount to be paid to plaintiff as damages. After the parties agreed to the plaintiff's damages, agreement was reached as to fees for plaintiff's counsel.

13. As to the plaintiff's damages, the parties used the result of the U.S. Department of Labor's investigation of defendant. **(See Exhibit 2)**. Following said investigation, the U.S. DOL concluded that plaintiff was owed $4,098.79 for the period from January 17, 2009 to July 16, 2011. Because plaintiff was employed by defendant from around September 2008 to October 2009, we extrapolated using the amount and period in the U.S. DOL investigation and increased the $4,098.79 figure to $5200 which covered the entire period of plaintiff's employment. Based on the knowledge of her work for defendant, and benefits of early resolution, and the objective role of the U.S. DOL, plaintiff feels it is reasonable to accept a settlement based on the U.S. DOL investigation in these circumstances.

14. After the parties agreed to pay plaintiff damages based on the DOL's investigation **(Exhibit 2)**, plaintiff's counsel provided defendant with time records for fees incurred in this matter – not including work concerning this motion for approval which was not contemplated. As the attached table in **Exhibit 3** shows, plaintiff expended 32 hours and 55 minutes at a rate of $600 an hour or $19, 750. **(Exhibit 3)**. After negotiations, the parties agreed to legal fees of $12, 090 – 20.15 hours at $600 an hour. **(See Exhibit 1)**. Defendant also agreed to reimburse plaintiff's counsel $410 in costs - $350 filing fee and $60 for service of process.

15. After reaching agreement to settle this action in its entirety, the defendant, on behalf of both parties, notified the court on July 17, 2012 of the settlement and requested a cancellation of the July 19, 2012 hearing. The parties did not believe that the FLSA prohibited the parties from settling without court approval.

16. In response to the notice of settlement, the Court issued an order on July 17, 2012, which stated in relevant part that the FLSA prohibited the parties from settling without court approval and directing plaintiff to submit a motion for approval by July 31, 2012.

## THE SETTLEMENT IS FAIR AND REASONABLE

17. This motion for approval is response to the Court's order directing the parties to seek court approval of the settlement.

18. Counsel for both parties have reviewed **Exhibit 1** and agreed to the settlement terms therein on behalf of the parties. Plaintiff has already signed **Exhibit 1**. Defendant's representative is currently out of town and defense counsel has indicated that defendant's representative will formally sign Exhibit 1 after he returns on August 1, 2012 – an updated Exhibit 1 will be provided to the Court.

### Plaintiff's Damages

19. The amount of damages (\$5200) to be paid to plaintiff under the settlement is fair and reasonable in the circumstances - the amount is acceptable to plaintiff **(See Exhibit 1)**, and is based on the objective investigation and compromises of the U.S. Department of Labor. **(Exhibit 2)**.

### Plaintiff's Counsel's Hours Expended

20. The hours (20.15) for which plaintiff's counsel is being compensated is also fair and reasonable, even though defendant is paying for less than two-thirds of the time expended by plaintiff's counsel (See Exhibit 3) – plaintiff's counsel has accepted this reduction as part of the compromise and settlement of this action.

### Plaintiff's Counsel's Hourly Rate

4

21. At the outset, plaintiff's counsel wishes that he did not have to toot his own horn, but
unfortunately, such is a necessary part of evaluating the requested billing rate, and plaintiff's
counsel does so reluctantly.

22. Plaintiff's counsel has been actively practicing law, primarily in the area of wage and hour
litigation since 2001 when he became a lawyer.

23. Plaintiff has been a solo practitioner since 2001 and throughout his career, has been the lead
on all his cases as well having sole responsibility for the management of his entire firm – this
is probably a lot more than the usual partner in a firm with a high head count.

24. During his career, plaintiff has handled hundreds of wage and hour matters including both
individual and class/collective action cases in both state and federal courts. Plaintiff has
successfully litigated before the Second Circuit Court of Appeals as well as the New York
Court of Appeals. Plaintiff has won cases on motion, at trial (bench and jury) and on appeal.

25. Plaintiff's counsel has twice been involved in contested hourly fee applications and in both
cases, the Court awarded plaintiff's counsel his requested hourly rate – Judge John Gleeson
here in the EDNY awarded plaintiff his requested rate of $250 an hour in December 2002,
and Judge Jed Rakoff in the SDNY awarded plaintiff his requested rate of $350 an hour in
August 2006. Judge Rakoff's fee award was affirmed by the Second Circuit in Barfield v.
New York City Health and Hospitals Corp., 537 F. 3d 132 (2d Cir. 2008).

26. Plaintiff's counsel's hourly rate for the year 2012 and the rate which was used for all work
expended on this matter is $600 an hour.

27. Plaintiff's counsel's $600 an hour rate is extremely reasonable in light of his increased skill
and experience since his previously awarded rates. In granting plaintiff's counsel his

requested rate of $350/hr in 2006, Judge Rakoff in <u>Barfield v. NYCHHC</u>, 2006 WL 2356152,

\* 1 (SDNY, 2006) stated in relevant part as follows in rejecting the defendants' challenge to

plaintiff's counsel's requested rate:

> This analysis ignores the considerable experience plaintiff's counsel has acquired
> as a solo practitioner, working primarily in the areas of wage and hour litigation
> in the past five years
>
> .... Accordingly, the Court finds the rate requested by plaintiff's counsel to be
> fully reasonable for counsel of his skill and experience.

28. Since the $250 award in 2002, plaintiff's experience has increased more than eight times.
Since the $350 an hour award in 2006, plaintiff's "considerable experience" in 2006 has
more than doubled but plaintiff's hourly rate has not.

29. In addition to an increase in skill and experience, an increase in billing rates is also based on
inflation, as well as related increases in operating costs. A lawyer with two years of
experience would bill at a higher rate today than a lawyer with two years experience in 2006
- solely because of the increase in prices and costs. For example, health insurance premium
have almost doubled in just the last four years alone. Marketing and other costs have gone up
considerably as well. The billing survey addressed in the attached summary **(Exhibit 4)** and
Article **(Exhibit 5)** show increases in billing rates across the industry ranging from four to
thirteen percent annually. When we adjust the two previous rates awarded for increases in
skill/experience as well as increases in operating costs and profits, the resulting number is far
in excess of the $600 an hour charged by plaintiff's counsel. Importantly, while the survey
showed that on average, the rate of increase in rates slowed during the recent recession, this
was most likely due to a reduction in clients and work. However, the opposite has been true
as to plaintiff's counsel. Because plaintiff's counsel practices in the area of employment law,
the demand for his services has actually increased during the recession as unemployment
increased and more and more people lost their jobs and sought legal help.

6

30. It is noted in the attached billing survey article that, "with an average partner rate topping $700 per hour and an average associate rate of more than $450 per hour, New York is the most expensive market in the country." **(See Ex. 5, pg 2, ¶ 2).** Because plaintiff's counsel is the lead on all his cases and is responsible for managing all aspects of his entire firm, he is more than the average partner in a multi-lawyer firm, and yet, his $600 an hour rate is still less than the $700 an hour average for partners in New York City.

31. Contingency risk is another relevant factor in evaluating billing rates. Some lawyers are paid hourly whether or not they win or recover for their clients. By contrast, plaintiff's counsel here is only paid if he recovers for the client. This contingency risk would warrant a rate higher than in situations where this risk does not exist.

32. Another factor in evaluating rates is whether case costs are advanced by the lawyer. Even where the lawyer works on a contingency basis, it is not uncommon for the client to pay the case costs in advance or as the case progresses. However, it is plaintiff's counsel's general practice as it is in this case, to advance those costs for the client with the realistic expectation of not being able to recover these costs if the client loses. The case costs can be a few hundred dollars or thousands dollars depending on the nature and length of litigation but any good planner at the outset must plan for the worst and hope for the best. This increased risk concerning case costs would also warrant a rate higher than in situations where this risk does not exist.

33. Another factor that affects rates is area focus or specialization. A generalist is usually worth a lower rate than a professional whose practice focus is narrower. In this regard, plaintiff's counsel's practice has focused almost exclusively in the area of wage and hour litigation like the instant case.

7

34. Rate increases are also based on supply and demand. Plaintiff's counsel uses a variety of marketing tools including newspaper and internet advertising. It is not uncommon to see plaintiff counsel ranked among the top advertisers in his category on Google. Because of this and other reasons, there is a strong demand for the services of plaintiff's counsel. In fact, plaintiff's counsel only accepts about one in every 10-15 clients who want his services.

35. Based on the foregoing, plaintiff and her counsel respectfully request that this Honorable Court approve the settlement terms contained in **Exhibit 1**.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

Executed on July 31, 2012

Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue,
Queens Village, New York 11427
Tel: 718-740-1000
*Counsel for plaintiff Maria Cabrera*

# EXHIBIT 4

# InsideCounsel

# Law firm billing rates steadily climbing despite down economy

Report finds a sharp increase in partners billing more than $1,000 per hour

BY ALEX VORRO
April 17, 2012 • Reprints



At a time when corporate purse strings are still cinched relatively tightly, legal departments probably aren't popping champagne bottles over the news that rates for their outside counsel are continuing to rise.

Legal software company TyMetrix, a business of Wolters Kluwer Corporate Legal Services, and the Corporate Executive Board research firm yesterday released their 2012 Real Rate Report. The report analyzes invoice data to quantify and explain what drives the billable hour, examines actual rates charged, law firm staffing behavior and matter phase costs. In doing so, the report analyzed more than $7.6 billion in law firm billings generated from 2007 to 2011 by more than 4,000 law firms and about 120,000 billers, including about 80,000 partners and associates.

The study revealed that law firm billing rates, which continued to rise throughout the recession, are expected to continue on their upward trajectory for the foreseeable future despite the post-recession pressure on corporate legal departments to control outside counsel spend. After outside counsel rates rose 8.2 percent from 2007 to 2008, rates plateaued somewhat from 2008 to 2009 (2.3 percent increase), but have grown steadily at more than 4 percent per year since 2009.

The report found that the most expensive lawyers are continuing to become more expensive. Rates for the highest billing partners ($800 or more per hour) grew about three times faster than rates for the lowest billing partners (less than $300 per hour). Concurrently, the rates for the highest billing associates ($500 or more per hour) rose nearly five times as quickly as the lowest billing associates (less than $200 per hour).

It's worth noting that despite this increase in price, companies tend to be willing to pay a premium for the high rates at large law firms. The report found that the percentage increase for firms with more than 1,000 lawyers was double what the smallest firms experienced. The average hourly rates from 2009 to 2011 for law firms with 501 to 1,000 lawyers increased 13 percent, while the hourly rate increase at law firms with one to 50 lawyers rose a meager 4 percent.

Other findings from the report:

- **Outside counsel charge different clients variant rates for similar work**: Ninety percent of lawyers charged different rates for similar types of work in 2011. Intellectual property (23.1 percent) and commercial contracts practices (18.7 percent) had the highest percentage difference in rates.
- **Use of entry-level lawyers can add significant costs**: The use of entry-level lawyers (associates with fewer than two years of experience since passing the bar exam) continues to decline. Additionally, matters staffed with entry-level associates tend to cost up to 20 percent more.

- **Consolidation not necessarily associated with lower rates**. While some in-house legal departments have successfully consolidated work into a single law firm, the report reveals that rates actually tend to increase as a law firm takes on more work from a client.

But despite these billing trends, Julie Peck, TyMetrix's vice president of strategy and market development, suggests that in-house legal departments shouldn't base their staffing, strategy and outside counsel selection solely on the basis of rates.

Peck tells InsideCounsel that the data suggests that corporate legal departments are typically paying for law firm size, location and senior talent. Larger firms, she says, often can more quickly execute on matters—and that

staffing certain matters on the front-end with more seasoned lawyers also tends to reduce the overall number of hours/days it takes to resolve a matter.

"When we see these types of positive correlations between firm size, lawyer seniority or expertise, and a more efficient execution on the matter—solely focusing on an 'hourly rate' might be missing the forest through the trees," Peck says. "The more advanced legal departments are beginning to incorporate this type of benchmarking and analytical data into how they manage their firms, the way they design AFAs with firms, and the degree to which they can effectively reduce their legal spend while maintaining their desired outcomes and risk profile."



Lawyers' Average Rates through the Recession and the Recovery

Year-To-Year Increase in Average Billing Rates

For the full report, visit TyMetrix.com.

## COMMENTS

## Showing 0 comments

© 2012 InsideCounsel. A Summit Business Media publication. All Rights Reserved.

# EXHIBIT 5



**Control Risks** DUE DILIGENCE • CORRUPTION RISK ASSESSMENT
CORPORATE INVESTIGATIONS • eDISCOVERY

Click here for more information >>

# CORPORATE COUNSEL
**ALM Properties, Inc.**
Page printed from: *Corporate Counsel*

Back to Article

# Latest Billing Rate Report: The Rich Keep Getting Richer

**Latest Billing Rate Report: The Rich Keep Getting Richer**

According to the 2012 Real Rate Report, hourly rates just keep rising?and the best-paid lawyers are raising their rates faster than everyone else.

Sara Randazzo
The Am Law Daily
April 17, 2012

Hourly rates just keep rising—and the best-paid lawyers are raising their rates faster than everyone else.

Those are two of the key findings contained in the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. The report, released Monday, is the second such collaboration between TyMetrix, a company that manages and audits legal bills for corporate legal departments, and the Corporate Executive Board.

Many of the new rate report's findings echo those contained in the 2010 study, including the fact that rates keep going up, almost across the board, and that the cost of a given matter can vary dramatically depending on a law firm's size and location and its relationship with a particular client.

At the same time, this year's study shows that the legal sector is becoming increasingly bifurcated, with top firms raising rates faster than those at the bottom of the market and large firms charging a premium price based purely on their size.

"What it's really showing is that there's an increased premium being paid for experience and expertise," says Julie Peck, vice president of strategy and market development at TyMetrix. "Some parts of the lawyer market are able to raise rates much more quickly, and are more impervious to economic forces then others."

To compile the current rate report, TyMetrix received permission from its clients to examine legal fees billed to 62 companies across 17 industries including energy, finance, retail, technology, insurance, and health care. The bills, which represent the amount actually paid by the companies in question rather than the amount initially charged, came from more than 4,000 firms in 84 metropolitan areas around the country. Every firm on the 2011 Am Law 100 is represented in the data.

The report's key data points include:

**A Widening Gap:** Hourly rates charged by lawyers in the legal sector's upper echelon grew faster between 2009 and 2011 than those charged by lawyers toiling on the lower rungs. Particularly striking was the jump in associate rates billed by those falling in the report's top quartile: 18 percent on average, to just over $600 per hour. Rates billed by top quartile partners, meanwhile, rose 8 percent, to just under just under $900 per hour. In the bottom quartile, associate rates rose 4 percent and partner rates rose 3 percent during the same period.

**The Recession's (Minor) Toll:** Even amid the economic downturn, the cost of an hour of a lawyer's time continued to rise faster than key measures of inflation. That said, the legal industry wasn't completely immune to the broader

economy's slowdown. After rising 8.2 percent between 2007 and 2008, hourly rates rose just 2.3 percent in 2009. Law firms bounced back a bit last year, with rates climbing 5.1 percent, to an average of $530 an hour.

**Location Counts:** Not surprisingly, lawyers working in major metropolitan areas—where, as the rate report notes, rents are typically higher—are the priciest. An address in Boston, Chicago, Los Angeles, San Francisco, or Washington, D.C., alone adds about $161 to the hourly rate charged by an individual lawyer. Those six cities and Baltimore, Houston, Philadelphia, and San Jose are the ten U.S. markets with the highest hourly rates. With an average partner rate topping $700 per hour and average associate rate of more than $450 per hour, New York is the most expensive market in the country. The least expensive? Riverside, California, where the average partner bills at under $250 per hour and associates bill at just over $300 an hour.

**In the Minority:** A small group of lawyers—12 percent—bucked the trend toward higher fees and actually  lowered rates between 2009 to 2011—and 3 percent trimmed rates by $50 or more per hour. (Most of those in the rate-cutting camp were based outside the big six markets identified above.) At the other end of the spectrum, 52 percent of lawyers increased rates by between $25 and $200 or more per hour. Another 18 percent increased rates by less than $25 per hour, and the final 18 percent held rates steady.

**First-Year Blues:** Even before the recession hit, clients balked at paying for what they considered on-the-job training for first-year associates. The latest rate report is likely to reinforce that reluctance, given its finding that using entry-level lawyers adds as much as 20 percent to the cost of a legal matter. The report offers evidence that firms may be accommodating clients on this front: The percentage of bills attributed to entry-level associates dropped from 7 percent in 2009 to 2.9 percent last year.

**Ties That Bind:** The more work one firm handles for a client—and the longer the client relationship extends—the higher the average rate the firm charges. For companies that paid one firm $10 million or more in a single year, the average hourly rate paid was $553 in 2011. By comparison, clients that limited their spending on an individual firm to $500,000 paid that firm an average of $319 per hour.

**Four-Digit Frontier:** Data has consistently shown that many lawyers hesitate to charge more than $1,000 an hour, and in 2011 just under 3 percent of the lawyers covered by the rate report had broken that barrier. Of those, the vast majority were working in the six main legal markets identified above and 60 percent of the time, they billed in increments of one hour or less.

**Playing Favorites:** Across all practice areas, 90 percent of lawyers charged different clients different rates for similar types of work. (The figure for mergers and acquisitions lawyers was 100 percent.) The differences from client to client can be extreme, and were even more pronounced in the current report than in the 2010 edition. Rates charged by intellectual property specialists, for instance, had a median variance of 23.1 percent, while lawyers doing commercial and contract work showed a 18.7 percent median difference.

**Who's Doing What?** A closer look at law firm bills for work performed on litigation and intellectual property assignments shows that the kind of timekeeper billing on a matter varies by practice type. On patent matters, the report shows, 47 percent of hours billed on average are attributed to paralegals, and 37 percent by partners. By comparison, paralegals account for just 8 percent of the work done on labor and employment litigation hours, while partners handle 45 percent.

*This article originally appeared in* *The AmLaw Daily*.



Copyright 2012. ALM Media Properties, LLC. All rights reserved.