UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
OSMAR SOCIAS,

                              Plaintiff,                      MEMORANDUM
                                                          AND ORDER

      -against-

                                                            13-CV-2151 (RLM)

VORNADO REALTY L.P. et al.,

                              Defendants.
------------------------------------------------------------x

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

      Plaintiff Osmar Socias ("plaintiff") asks this Court to conclude its *Cheeks* review of the settlement reached in this action under the Fair Labor Standards Act ("FLSA" or the "Act"), and to release to his attorney certain fees currently held in escrow pending that review. For the following reasons, the Court grants plaintiff's motion.

## PROCEDURAL BACKGROUND

      Plaintiff initiated this lawsuit on April 10, 2013, alleging that defendants Vornado Realty L.P. ("Vornado") and Acqua Treat, Ltd. ("Acqua Treat") (collectively, "defendants") failed to pay him certain overtime wages in violation of the FLSA. See Complaint, Electronic Case Filing ("ECF") Docket Entry ("DE") #1. Vornado notified the Court on June 18, 2013 that the parties were executing a settlement agreement to resolve all claims and anticipated soon filing a stipulation of dismissal. See Letter to Hon. Roanne L. Mann from Julie L. Werner, Esq., DE #11. Presaging the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), this Court then ordered the parties to file papers sufficient to enable the Court to assess the fairness of their proposed settlement, see Endorsed Order (June 18, 2013) (the "6/18/13 Order"), DE #12.

Plaintiff objected to the 6/18/13 Order, asserting that the Court had no authority under the FLSA to "prevent[] the parties from settling and discontinuing this action" by stipulation pursuant to Rule 41 of the Federal Rules of Civil Procedure ("FRCP"), see Response to Order to Show Cause (June 21, 2013) at 1, DE #13, and that, in any event, the parties' settlement agreement was fair and reasonable, see id. at 3. The Honorable Dora L. Irizarry, the District Judge then assigned to this case, overruled plaintiff's objections. See Memorandum and Order (Jan. 16, 2014), DE #15.

Plaintiff submitted to the Court a copy of the parties' proposed settlement agreement and a table setting out the fees of his attorney, Abdul Hassan, Esq., in this matter. See Settlement Agreement (June 21, 2013), DE #13-3; Fee Table (June 21, 2013), DE #13-4. In pertinent part, the proposed settlement called for defendants to make three payments to plaintiff and his attorney: (1) $5,544 to plaintiff, less applicable taxes and withholdings; (2) an additional $2,000 to plaintiff, "representing liquidated and other damages"; and (3) $9,956 to Mr. Hassan, "representing legal fees, costs and disbursements ($470 in costs and 15.81 hours at $600/hr) . . . ." Settlement Agreement at 1–2. The fee table stated that Mr. Hassan had worked twenty-six hours and thirty-two minutes on this matter, at an hourly rate of $600, for a grand total of $16,190 in fees and costs. See Fee Table at 1–2.

On March 28, 2014, after all parties consented to have the matter handled by a magistrate judge pursuant to 28 U.S.C. § 636(c),[1] this Court held a telephonic hearing on the fairness of the

---

[1] See Consent to Jurisdiction by U.S. Magistrate Judge (Mar. 21, 2014), DE #19; Notice, Consent, and Reference of Civil Action to Jurisdiction by U.S. Magistrate Judge (Mar. 25, 2014), DE #20.

proposed settlement.  See Minute Order (Mar. 28, 2014), DE #21.  During the (recorded) hearing, one of the defense attorneys acknowledged that the settlement of the underlying claims had not been reached independently of the resolution of the fee amount; on the contrary, defendants had offered to settle for a gross amount of $17,500, leaving it up to Mr. Hassan and plaintiff to allocate the proceeds between attorney and client.  See id. at 1.  Upon hearing this, the Court expressed concern about the amount of fees that Mr. Hassan would be receiving from the settlement funds, and his $600 hourly rate, and ordered him to furnish a copy of his retainer agreement with plaintiff.  See id. at 2.  Mr. Hassan did so, but maintained that the Court "ha[d] no authority to deprive the parties of the right to discontinue this action by stipulation pursuant to Rule 41 without court approval."  See Letter Supplement Following March 28, 2014 Hearing (Mar. 30, 2014) (the "3/30/14 Letter") at 1, DE #22.  In addition, he noted that another judge in this District had recently certified that issue for appeal.  See id. at 2 (citing Cheeks v. Freeport Pancake House, Inc., 12-CV-4199 (JS)(ARL)); see also Letter Correction to DE #22 (Apr. 1, 2014), DE #23.

The retainer agreement attached to counsel's letter provides that Mr. Hassan was entitled to a contingency fee, which would be the greater of (1) one-third of all sums recovered; (2) "[a] reasonable hourly fee[,] which is the amount of [the] [a]ttorney's hourly rates . . . times the number of hours spent by the [a]ttorney on [the] [c]lient's behalf"; or (3) "[a] separate recovery of fees such as where a court . . . awards attorney's fees or where a defendant(s) settles a demand for fees."  Attachment 1 to 3/30/14 Letter ¶ 12, DE #22.  The retainer agreement describes Mr. Hassan's "non-contingency hourly rates" as "$550 in 2011, $600 in 2012, $675 in

2013, and $750 in 2014[,]" plus an "hourly rate increase of ten percent annually thereafter." Id. ¶ 26. Another provision offers hypothetical billing amounts based on a $600 hourly fee. See id. ¶ 13. In submissions to this Court, Mr. Hassan has attempted to justify an hourly rate of $600 in FLSA cases because they "can be difficult to litigate[,] especially where there are strong denials and an absence of accurate and complete records, or fact-intensive exemption defenses."[2] Letter (Sept. 29, 2016) (the "9/29/16 Letter") at 4, DE #30. He has also drawn comparisons between his rate and the $1,100 hourly rate charged by Paul Clement in a recent case, as well as the hourly rate of $750 purportedly charged by an unnamed FLSA defense attorney. See id.

On April 7, 2014, to avoid any further delay in plaintiff's receipt of the portion of the settlement proceeds to which he was unquestionably entitled, the Court directed defendants to pay to plaintiff both the $5,544 and $2,000 amounts specified in the proposed settlement. See Order at 2, DE #25. The Court further directed defendants to pay to Mr. Hassan $9,956, as stipulated in the proposed settlement, to be held in escrow pending the Second Circuit's resolution of the Cheeks appeal. See id. If the Second Circuit affirmed the order at issue in that case, and held that district courts are entitled to review the fairness of FLSA settlements, this Court would determine whether the fees for Mr. Hassan were fair and reasonable or whether plaintiff should be awarded a larger portion of the $17,500 settlement. See id. If the Second Circuit reversed the lower court's decision in Cheeks, this Court would authorize release of the escrowed funds to Mr. Hassan. See id. On August 7, 2015, the Second Circuit affirmed. See Cheeks, 796 F.3d at 200.

---

[2] The Court notes in passing that this litigation has raised no such issues.

Following the Cheeks decision, this Court conducted another telephone conference on September 15, 2016 to resume its review of the parties' proposed settlement. See Minute Entry (Sept. 15, 2016). The Court again expressed concern about the allocation of the settlement funds between plaintiff and Mr. Hassan. See id. Specifically, the Court asked Mr. Hassan why "the [purportedly unpaid overtime] hours claimed by [p]laintiff went from over 200 (about 235) alleged in the complaint to 154 hours during settlement discussions." 9/29/16 Letter at 1. In response, Mr. Hassan described how the allocation was determined, but asked for two weeks to check his records and to make a written submission addressing the issue, along with any supporting documents obtained from defense counsel in informal discovery. See id.

On September 29, 2016, Mr. Hassan submitted a letter and supporting documents concerning the number of unpaid overtime hours claimed by plaintiff. See 9/29/16 Letter; Time Records from Defendant Acqua Treat, DE #30-1; Plaintiff's Time-Related Records, DE #31-2. "As is almost always the case," Mr. Hassan stated, "the allegations in the complaint [were] refined as information and documents [were] exchanged" between the parties. 9/29/16 Letter at 1. Though plaintiff initially estimated his uncompensated overtime to be 235 hours, subsequent document productions from Acqua Treat led plaintiff to review his own records and revise his estimate down to 154 hours, which Mr. Hassan communicated to defendants. See id. at 2. According to Mr. Hassan, "the settlement reflected full payment for the 154 hours of overtime, plus about 50 percent liquidated damages." Id.

## DISCUSSION

In order for an FLSA settlement to become effective, the Court must scrutinize it to determine if it is fair and reasonable. See Cheeks, 796 F.3d at 206. This analysis includes

separately assessing the reasonableness of attorney's fees. See, e.g., id. at 206 (noting that settlement provision providing for attorney's fees "between 40 and 43.6 percent" of the total settlement payment "highlight[ed] the potential for abuse" in FLSA settlements and "underscore[d] why judicial approval in the FLSA setting is necessary"); Lopez v. 41-06 Bell Blvd. Bakery LLC, No. 15-CV-6953 (SJ)(PK), 2016 WL 6156199, at *3 (E.D.N.Y. Oct. 3, 2016), adopted by 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016); Flores v. Express Rego Park, Inc., No. 15-CV-1410 (KAM) (SMG), 2016 WL 386042, at *2–4 (E.D.N.Y. Feb. 1, 2016); Velazquez v. SAFI-G, Inc., 137 F.Supp.3d 582, 585–86 (S.D.N.Y. 2015) (concluding that contingency fee of one-third of FLSA settlement funds was unreasonably high). Courts in this Circuit have declined to award more than one third of the net settlement amount as attorney's fees absent "extraordinary circumstances." Santos v. EL Tepeyac Butcher Shop Inc., No. 15-CV-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 12, 2015); see also Lopez, 2016 WL 6156199, at *3 (stating that courts within the Eastern District of New York "generally" accept fees of one-third of the settlement amount in FLSA cases).

Mr. Hassan's fee request in the instant case raises several concerns. He seeks to recover 57 percent of the total settlement amount, see Settlement Agreement at 1–2, a rate well above what courts in this Circuit have deemed acceptable, see, e.g., Santos, 2015 WL 9077172, at *3; Lopez, 2016 WL 6156199, at *3. He attempts to justify this recovery by asserting an hourly billing rate of $600, which is likewise well above what courts in this District have deemed acceptable in FLSA matters. See Flores, 2016 WL 386042, at *4 (collecting cases). Moreover, as discussed during the March 28, 2014 telephone conference, the parties did not separately negotiate plaintiff's settlement recovery and Mr. Hassan's fees—a practice that at the very least

-6-

raises questions about the fairness of plaintiff's share of the recovery.

Nevertheless, Mr. Hassan has adequately shown that plaintiff has received all overtime wages to which he was entitled, and that the partial liquidated damages amount set out in the settlement agreement constitutes a reasonable compromise of a disputed issue.  Plaintiff's recovery of $5,544 represents compensation for all 154 overtime hours that plaintiff now claims were uncompensated, and at the overtime rate of $36 that plaintiff demanded.  See 9/29/16 Letter at 2.  Based on defendants' production of time records, Mr. Hassan is likely correct that plaintiff's entitlement to liquidated damages under the Act was doubtful, see id. at 2–3, rendering the $2,000 allocated to plaintiff as liquidated damages a reasonable compromise.  Moreover, but for Mr. Hassan's voluntary reduction of his time charges from approximately twenty-six hours to slightly less than sixteen hours, his effective hourly rate would have been approximately $350—without taking into account the hours he expended on the case after the Second Circuit issued its decision in Cheeks.  Under these circumstances—and *only* these specific circumstances—the Court concludes that Mr Hassan may recover the remaining settlement funds as attorney's fees, though it cautions him that future recoveries of this kind are highly unlikely.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion to conclude the *Cheeks* review of the settlement agreement reached in this case and to release to his attorney the $9,954 in fees currently held in escrow.

**SO ORDERED.**

**Dated:** Brooklyn, New York
November 3, 2016

/s/   *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**